UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NATHANIEL SIMS,

       Plaintiff,                      **DECISION AND ORDER**
                                                **No. 09-CV-6643 (MAT)**
  -vs-

DR. GORMAN, R. POWELL, M. STIRK, K.
WASHINGTON, and M. KEARNEY,

       Defendants.

---

## I. Introduction

Plaintiff Nathaniel Sims ("Sims" or "Plaintiff"), a New York State prison inmate who is proceeding pro se and in forma pauperis, commenced this action pursuant to 42 U.S.C. § 1983, complaining of a violation of his civil rights at the hands of prison officials and seeking recovery of compensatory and punitive damages. Sims contends that by their actions, defendants subjected him to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution, and violated his substantive right to due process. For the reasons set forth below, the Court finds that both Plaintiff's claims are subject to dismissal on the merits as a matter of law.

## II. Background

At all times relevant to this lawsuit, Sims was an inmate of the New York State Department of Correction and Community Services

-1-

("NYSDOCCS"),[1] housed at Wende Correctional Facility ("Wende") from August 28, 2009, until September 2, 2010. Because of his diagnoses of bipolar disorder and anti-social personality disorder, Sims received psychiatric care from the Mental Health Unit ("MHU") at Wende. Defendants Kevin Gorman, M.D. ("Dr. Gorman"); MHU Chief Rasheen Powell, ("Powell"); social worker Margaret Stirk, L.M.S.W. ("Stirk"); and therapist Kendra Washington ("Washington"), were, at all relevant times, employed by NYSDOCCS at Wende's MHU. They are collectively referred to hereinafter as "the MHU Defendants". Defendant Captain Martin Kearney ("Capt. Kearney") was, at all relevant times, a supervising corrections officer at Wende.

On August 28, 2009, at 8:41 a.m., Dr. Gorman observed in his treatment notes that Plaintiff has been placed in the Residential Crisis Treatment Program ("RCTP") because he was "threatening self harm by cutting up or hanging up if he had to remain in SHU [("special housing unit")]." (000004).[2] Dr. Gorman remarks that Plaintiff ate dinner the previous day and had not harmed himself in RCTP, but was still refusing his medications. Id. Apparently, Plaintiff had been released from RCTP on August 27, 2009, but had been "readmitted rapidly as he threatened self harm . . . ." Id.

---

[1] On April 1, 2011, New York State Department of Correctional Services and Parole merged together into one agency now known as New York State Department of Corrections and Community Supervision.

[2] Numbers in parentheses refer to the Bates-numbered documents attached as Exhibits A and B to Defendants' Appendix to Local Rule 56.1 Statement of Material Facts.

With regard to Plaintiff's "SUICIDE RISK ASSESSMENT," Dr. Gorman noted that Plaintiff was "no longer agitated, [was] eating but refusing medication. He is not actively suicidal today [August 28th] . . . He is released from RCTP." (000004) (capitals in original). At about 11:30 a.m. on August 28, 2009, the nursing progress report notes as follows: "Quiet, behavior has been uneventful, seen by treatment team, presents angry and states he has suicidal ideations, released from RCTP to SHU, no distress noted. 12 p.m. [Plaintiff discharged] from RCTP per Margaret Stark [sic]." (000007).

After his discharge from RCTP and prior to his admission to the SHU, Plaintiff was placed in a holding cell where he was examined by a psychologist, James A. Nesser, Ph. D. ("Dr. Nesser"). Dr. Nesser, who is not a defendant in this action, opined that it was "likely that [Sims's] statements regarding self-harm are instrumental [sic] to avoid being transferred to the SHU." (000008). Plaintiff declined to describe his suicide plans to Dr. Nesser, but "indicated that he did have a plan." (000008). Noting that Plaintiff was classified as "MHL 1S [sic], has a life sentence"; had been diagnosed with Bipolar Disorder as well as Anti-Social Personality Disorder; and had a history of three or more suicide attempts, Dr. Nesser concluded that Plaintiff "posed a significant threat of self-harm based on his level of distress, diagnoses, self-harm history, and his sentence." Id. When Dr.

Nesser communicated this information to the administrative staff, he was informed that Powell, the MHU Chief had ordered Plaintiff not to be returned to RCTP based upon threats of self-harm alone. Dr. Nesser adhered to his recommendation that Plaintiff should be transferred to RCTP "due to the risk of self-harm." Id.

Plaintiff was admitted to SHU and later that day fashioned a noose and hung himself from the cell bars at about 1:45 p.m. The following misbehavior report was filed in connection with the incident:

> [Plaintiff] removed his underware [sic] and began to rip them up. Sgt. Kintzel told him to give up the underware [sic] but the inmate refused. The Sgt. then ordered me to remain in front of the cell while he left the company. Simms [sic[ then proceeded to tie the strips of cloth into a noose and attach it to the cell door bars. I immediately signaled CO Mack that Simms [sic] was attempting to hang-up. An extraction team (assembled earlier) came down the company, cell 5 was opened, the noose was cut with scissors, the inmate was removed from the cell. The inmate was placed on a stretcher, handcuffed and taken to the RMU [("Regional Medical Unit")].

(000005). After that incident, Sims was placed in MHU for observation.

The treatment notes from later that day (August 29th) indicate that Sims "[was] [q]uiet, lying in bed, refused to talk, using hand gestures, offers no complaint, no distress noted."(000006). At 6 p.m., the treatment notes indicate that Sims "continues in deso. [sic] calm & quiet. Lying on bunk much of the shift. Pleasant on

approach. Cooperative with p.m. meds. No lethality voiced[;] will continue to assess." Id.

On September 2, 2009, Plaintiff was discharged from MHU and transferred to SHU.[3] Capt. Kearney issued a "deprivation order" which stated that pursuant to 7 N.Y.C.R.R. § 305.2, Sims was

> being deprived of . . . all in cell property except 1 MHU gown, 1 MHU matt [sic], 1 pair shower shoes because it is determined that a threat to the safety or security of staff, inmates or State property exists and for the fallowing specific reason(s): You continue to manipulate staff by threatening, feigning, and actually committing acts of self harm.

(000031). Plaintiff asserts that he was constantly cold and became ill with flu-like symptoms "due to [the] icy cold condition" in the stripped cell. Plaintiff's Rebuttal ("Pl. Reb.") at 7.

The following day, September 3, 2009, the deprivation order was modified: Plaintiff was given a toothbrush, undergarments, pen, paper, and two envelopes. (000031). On September 4, 2009, he was given a set of "greens" (pants and shirt), a mattress, two sheets, a pillow and pillowcase, and a blanket. Id. On September 8, 2009, all of his property was returned to him. (000032).

Plaintiff pursued his administrative remedies, seeking compensatory and punitive damages from NYSDOCCS based upon the failure to return him to RCTP after he voiced suicide threats to

---

[3] Defendants inexplicably have omitted from their Statement of Material Facts any description of the subsequent events–such as Sims's discharge from MHU and transfer to SHU. Nor have defendants described the facts giving rise to Plaintiff's complaints against Capt. Kearney. The Court has pieced together the narrative from Plaintiff's Rebuttal to Defendants' Summary Judgment Motion ("Pl. Reb.") and the Exhibits to Defendants' Appendix.

Dr. Nesser and the deprivation order. These applications were denied, and Plaintiff subsequently instituted this proceeding. Currently pending before the court is a motion for summary judgment filed on behalf of the defendants named in Sims's complaint. In their motion, argue that both claims are lacking in merit.

Although defendants in their answer raised the affirmative defense that Sims had failed to exhaust his administrative remedies, they have not reasserted such an argument in their motion for summary judgment. Sims has submitted documentation substantiating his completion of the administrative grievance process, and it appears that his claims are exhausted.

For the reasons that follow, defendants' motion for summary judgment (Dkt. 30) is granted and the complaint (Dkt. 1) is dismissed in its entirety.

**III. Discussion**

   **A.   General Legal Standards**

      **1.   Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and

drawing reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Unrepresented litigants are entitled to "a certain liberality with respect to procedural requirements." Mount v. Book-of-the-Month Club, Inc., 555 F.2d 1108, 1112 (2d Cir. 1977); see also Moates v. Barkley, 147 F.3d 207, 209 (2d Cir. 1998) ("[P]ro se litigants are afforded some latitude in meeting the rules governing litigation[.]") (citations omitted). Nevertheless, a pro se plaintiff must establish more than mere "metaphysical doubt as to the material facts[,]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), in order to defeat a motion for summary judgment.

### 2. 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in

part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. E.g., Dwares v. City of N.Y., 985 F.2d 94, 98 (2d Cir. 1993).

### 3. Due Process

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. Zinernon v. Burch, 494 U.S. 113, 125 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them[,]" id. (internal quotations marks and citation omitted), while the procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*[,]" id. at 125-126 (internal quotations marks and citations omitted; emphasis in original). A substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process," which may occur after the wrongful action in question. Id.

### 3. Eighth Amendment

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments[,]" U.S. CONST., amend VIII, which "includes punishments that 'involve the unnecessary and wanton infliction of pain.'" Chance v. Armstrong,

143 F.3d 698, 702 (2d Cir. 1998) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). This standard includes both subjective and objective components. Chance, 143 F.3d at 702 (citing Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (explaining that the alleged deprivation of medical care must be, in objective terms, "sufficiently serious", and must be committed by a defendant acting "with a sufficiently culpable state of mind")). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Proof of deliberate indifference may be found where a prison official or employee "intentionally den[ies] or delay[s] access to medical care or intentionally interfer[es] with the treatment once prescribed." Estelle v. Gamble, 429 U.S. at 104-05. Deliberate indifference requires intentional or criminally reckless conduct; negligence or even gross negligence will not suffice. See Farmer, 511 U.S. at 835-40. The totality of an inmate's medical care must

be considered in order to determine whether a prison official has acted with deliberate indifference to serious medical needs. Gutierrez v. Peters, 111 F.3d 1364, 1375 (7th Cir. 1997).

**B.   Analysis of Plaintiff's Claims**

   **1.   Deliberate Indifference to Plaintiff's Mental Health Needs by the MHU Defendants in Violation of the Eighth Amendment**

Plaintiff alleges that on August 28, 2009, the MHU Defendants were deliberately indifferent to his medical needs when they refused to return him to RCTP and allowed him to be placed in SHU despite his history of suicide attempts and the fact that he threatened to harm himself if placed in SHU. Defendants argue that mere differences of opinion between the doctor and the inmate over the inmate's treatment are insufficient to state an Eighth Amendment claim. See Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given medical attention that judges would wish to have for themselves.").

The Court finds that Sims's diagnosed mental illnesses (bipolar and antisocial personality disorders), and concomitant suicidal ideation and actual suicide attempts, constituted a serious medical need. However, the Court does not find that on this record, the MHU Defendants acted with "deliberate indifference" for

purposes of an Eighth Amendment claim.  Although one medical professional, Dr. Nesser, believed that Sims should be placed in psychiatric observation in MHU because he was voicing suicidal threats immediately before being placed in SHU, the MHU Defendants, who had been treating and interacting with Sims for a much longer period of time while he was in RCTP, disagreed.

The MHU Defendants, after treating Plaintiff and observing that he was psychiatrically stable, declined to place Plaintiff in RCTP based solely on his suicide threats. The MHU Defendants likely surmised that Plaintiff's statements to Dr. Nesser, made just before being placed into an SHU cell, reflected attempts at manipulation rather than a true crisis.[4] Even Dr. Nesser found that Sims's suicide threats were manipulative and made in an attempt to prevent his placement in SHU.

Federal courts faced with similar claims have noted that "[w]hether to place a prisoner on suicide watch and what level of precaution to take with an inmate are issues within a professional medical judgment." Gay v. Hammersley, No. 08-59, 2009 WL 596114, at *6 (S.D. Ill. Mar. 6, 2009) (citing Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1996) (noting the distinction between a "medical judgment" and deliberate mistreatment: "a medical decision not to order an X-ray, or like measures, does not

---

[4] In similar cases, medical professionals have observed that placing inmates on suicide watch or in crisis-care simply at their behest is counter-therapeutic. See Gay v. Hammersley, 2009 WL 596114, at *7.

represent cruel and unusual punishment" and "[a]t most it is medical malpractice . . .")); see also Hott v. Hennepin Cnty., Minn., 260 F.3d 901, 905 (8th Cir. 2001) ("We have generally treated allegations that officials failed to prevent jail suicides as claims for failure to provide adequate medical treatment ."); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010) ("We make no determination as to whether Nurse Jones's decision to transfer Jasper from Level I suicide watch to Level II was medically prudent under the circumstances. . . . Although in hindsight, Nurse Jones may not have made the best or even the proper medical decisions[.]"); Starks v. Couch, No. 08CV407, 2009 WL 331357, *2 (S.D. Ill. Feb. 11, 2009) ("Defendant Rhodes's precautionary measure of placing Starks on suicide watch to prevent him from harming himself was a discretionary function done in good faith as a mental health professional."). "It is well established that mere differences in opinion regarding medical treatment do not give rise to an Eighth Amendment violation." Dean, 804 F.2d at 215; see also Gamble, 429 U.S. at 107; Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972). "Negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." Chance, 143 F.3d at 703.

Here, although Sims disagreed with the MHU Defendants' decision not to return him to RCTP for psychiatric observation, this disagreement is not an actionable Eighth Amendment claim for

purposes of 42 U.S.C. § 1983. Accord Gay, 2009 WL 596114, at *6 ("While Plaintiff disagreed with Defendant's decision not to place him on suicide watch . . . , that does not give rise to civil rights claim for violation of his Eighth Amendment right.") (citing Garvin v. Armstrong, 236 F.3d 896, 897 (7th Cir. 2001) ("[A] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation.") An inmate does not get to decide on a particular course of treatment. Meriweather v. Faulkner, 821 F.2d 408, 413 (7th Cir. 1987)); see also 2009 WL 596114, at *14 ("Simply put, an inmate does not have a constitutionally protected right to be placed on crisis watch at any time he chooses."). The fact that the MHU Defendants' opinion conflicted with that of another medical professional does not chage the result. See Estate of Cole, 94 F.3d at 262 ("Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference.") (citing Estelle v. Gamble, 429 U.S. at 107; White v. Napoleon, 897 F.2d 103, 109-10 (3d Cir. 1990)).

In a similar case involving a prison doctor's failure to take sufficient precautions to prevent an inmate from committing suicide, the Seventh Circuit held that "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or

standards as to demonstrate that the person responsible did not base the decision on such a judgment." Id. (footnotes omitted).

Considering the totality of Sims's treatment by the MHU Defendants and the timing of his suicide threats, the Court finds as a matter of law that even if the MHU Defendants' treatment decision was erroneous, deliberate indifference cannot be inferred because the decision was not "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment," Estate of Cole, 94 F.3d at 262 (citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982)). Accordingly, Plaintiff's first cause of action alleging an Eighth Amendment violation against the MHU Defendants is dismissed. See Estate of Cole, 94 F.3d at 263 (prison doctor's diagnosis of pre-trial detainee (who asphyxiated himself with a plastic bag) as a "potential suicide risk" rather than as a "high suicide risk" requiring greater precautions was such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the doctor did not base her diagnosis on such judgment; thus, plaintiffs cannot establish that the doctor was deliberately indifferent to the decedent's serious medical needs).

### 2. Substantive Due Process Violation by Captain Kearney

As his second cause of action, Plaintiff contends that Captain Kearney violated his constitutional rights by ordering that he be

placed in a "'stripped cell' with nothing but a half-inch 'mat'[.]" Pl. Reb. at 6. In his complaint, Plaintiff characterizes this cause of action as a due process claim arising under the Eleventh Amendment. See Dkt. #1. Defendants have interpreted his allegations as sounding in substantive due process, and the Court agrees with this approach.

"Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against constitutional action that is incorrect or ill-advised." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted). "Very few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process." Samms v. Fischer, No. 9:10-CV-0349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) (citing Sandin v. Conner, 515 U.S. 472, 479 n. 4, 484, (1995) (providing only two examples of the type of condition "shocking" enough to offend substantive due process principles-the transfer to a mental hospital and the involuntary administration of psychotropic drugs)).

The first step in a substantive due process analysis is to identify the precise constitutional right at stake. Lowrance, 20 F.3d at 537 (citing Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Here, the Court assumes for the sake of argument that Plaintiff had a substantive due process right to possess the

property in question (e.g., clothing, normal bedding, and other items of personal property) unless grounds existed for Captain Kearney to deny Plaintiff access to them. E.g., Smith v. Burge, No. 9:03-CV-0955 (LEK/GHL), 2006 WL 2805242, at *8 (N.D.N.Y. Sept. 28, 2006) (citing 7 N.Y.C.R.R. § 305.2(a) ("An order depriving an inmate of a specific item . . . may be issued when it is determined that a threat to the safety or security of staff, inmates, or State property exists. . . .")); see also 7 N.Y.C.R.R. § 305.2(e) ("Any deprivation order depriving an inmate of minimum standard items (e.g., bedding, clothing, etc.) for 'mental health' or 'psychiatric' reasons must be approved by an appropriate clinical professional or, in their absence, by the ranking facility health service professional.").

Sims contends that Captain Kearney's deprivation order citing safety and security concerns was unfounded given MHU's assessment that he was no longer a threat to himself and could be placed in a regular cell in SHU. Therefore, Sims argues, the deprivation was not authorized under 7 N.Y.C.R.R. § 305.2(a). See Pl. Reb. at 6-7. Sims also asserts that Captain Kearney's deprivation order could not be justified under 7 N.Y.C.R.R. § 305.2(e) because individuals in the MHU "assured [him] that it wasn't a decision by [a] mental health or medical professional," Pl. Reb. at 7, to issue the deprivation order.

However, "it is not material to a substantive due process claim whether an inmate's conduct 'in fact gave [a corrections officer] reasonable grounds to believe that [the inmate] posed a threat to the order of the [correctional] facility or whether [the alleged deprivation sustained by the inmate] therefore in fact violated [a particular DOCS rule or regulation][,]'" Smith v. Burge, 2006 WL 2805242, at *9 (quoting Lowrance, 20 F.3d at 537, n. 6) ("We express no view as to whether [the inmate]'s conduct in fact gave [the officer] reasonable grounds to believe that [the inmate] posed a threat to the order of the facility or whether [the inmate]'s administrative confinement therefore in fact violated section 251-1.6(a). These issues, which rely on facts that may be disputed, are not material to [the inmate]'s due process claims.").)

The Court agrees with Plaintiff that the manner in which the deprivation order was written (noting that Plaintiff "continue[s] to manipulate staff by threatening, feigning and actually committing acts of self harm") could be interpreted as retributive. In addition, it is arguable that 7 N.Y.C.R.R. § 305.2(e) may not apply when a safety concern does not affect inmates other than the one who is suffering the deprivation order, and that id., § 305.2(e), which permits deprivations for psychiatric or mental reasons, instead should have applied here. However, whether or not Captain Kearney in fact violated 7 N.Y.C.R.R. § 305.2 is not

dispositive because the standard for substantive due process claims is whether the complained-of conduct was arbitrary or conscience-shocking. See Smith v. Burge, 2006 WL 2805242, at *9 (citing Lowrance, 20 F.3d at 537). Captain Kearney arguably could have concluded that in light of Sims's recent suicide attempt upon being moved from MHU to SHU, it would be prudent to deprive Sims of the means to make another such attempt and observe how he adjusted to his new situation for a period of time. Furthermore, the total deprivation only lasted for one day; Plaintiff was given a toothbrush, undergarments, pen, paper, and two envelopes on September 3, 2009. On September 4, 2009, he was given a set of "greens" (pants and shirt), a mattress, two sheets, a pillow and pillowcase, and a blanket. On September 8, 2009, all of his property was returned to him.

Given Plaintiff's history and the brief length of the deprivation, the Court concludes that, as matter of law, Captain Kearney's conduct was not arbitrary or conscience-shocking in the constitutional sense. In other words, Plaintiff has failed to create a triable question of fact as to whether the state action-the deprivation order-was arbitrary in the constitutional sense and therefore violative of substantive due process. Accordingly, the Court grants summary judgment dismissing the second cause of action involving Captain Kearney.

**IV. Conclusion**

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #30) is granted and Plaintiff's complaint (Dkt. #1) is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   February 21, 2012
         Rochester, New York